IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANNY R. SANDERS,<br><br>　　　　　　Petitioner,<br><br>　vs.<br><br>A. P. KANE, Warden,<br><br>　　　　　　Respondent.<br>　　　　　　　　　　　　　　　／ | No. C 04-2886 WHA (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

　　　　This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254.  The petition is directed to denial of parole.

　　　　The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court.  Petitioner has responded with a traverse.  For the reasons set forth below, the petition is **DENIED**.

## STATEMENT

　　　　In 1985, a jury convicted petitioner of the first-degree murder of his girlfriend and auto theft.  With enhancements for use of a weapon and causing great bodily injury, he was sentenced to twenty-seven years to life in state prison.  This petition attacks the denial of parole at his first parole hearing, on June 26, 2002.

///

///

**DISCUSSION**

**A.  STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340.  This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Bragg v. Galaza*, 242 F.3d 1082,

2

1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001). A petitioner must present clear and convincing evidence to overcome § 2254(e)(1)'s presumption of correctness; conclusory assertions will not do. *Id.*

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

**B.    ISSUES PRESENTED**

Petitioner raises thirteen issues in support of his contention that his rights were violated by the Board. Respondent denies this and contends that California prisoners have no liberty interest in parole and that if they do, the only due process protections available are a right to be heard and a right to be informed of the basis for the denial – that is, respondent contends there is no due process right to have the result supported by sufficient evidence. Because these contentions go to whether petitioner has any due process rights at all in connection with parole, and if he does, what those rights are, they will addressed first.

**1.    RESPONDENT'S CONTENTIONS**

The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1.

**a.    LIBERTY INTEREST**

Respondent contends that California prisoners have no liberty interest in parole. Respondent is incorrect that *Sandin v. Conner*, 515 U.S. 472 (1995), applies to parole decisions, *see Biggs v. Terhune*, 334 F.3d 910, 914 (9th Cir. 2003) (*Sandin* "does not affect the creation of liberty interests in parole under *Greenholtz* and *Allen*."), and, applying the correct analysis, the California parole statute does create a liberty interest protected by due process, *see McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002) ("California's parole scheme gives rise to a

3

1 cognizable liberty interest in release on parole."). Respondent's claim to the contrary is without
2 merit.

### b. DUE-PROCESS PROTECTIONS

Respondent contends that even if California prisoners do have a liberty interest in parole, the due process protections to which they are entitled by clearly-established Supreme Court authority are limited to notice, an opportunity to be heard, and a statement of reasons for denial. That is, he contends there is no due process right to have the decision supported by "some evidence." This position, however, has been rejected by the Ninth Circuit, which has held that the Supreme Court has clearly established that a parole board's decision deprives a prisoner of due process if the board's decision is not supported by "some evidence in the record", or is "otherwise arbitrary." *Irons v. Carey*, 479 F.3d 658, 662 (9th Cir. 2007) (applying "some evidence" standard used for disciplinary hearings as outlined in *Superintendent v. Hill*, 472 U.S. 445-455 (1985)); *McQuillion*, 306 F.3d at 904 (same). The evidence underlying the Board's decision must also have "some indicia of reliability." *McQuillion*, 306 F.3d at 904; *Biggs*, 334 F.3d at 915. The some evidence standard identified in *Hill* is clearly established federal law in the parole context for purposes of § 2254(d). *See Sass*, 461 F.3d at 1128-1129.

### 2. PETITIONER'S CLAIMS

The grounds for habeas relief presented in the petition are that: (1) the Board of Prison Terms ("BPT") denied him assistance of counsel by dismissing his appointed counsel and forcing him to proceed without counsel; (2) his due process rights were violated when the BPT considered a charge against him that had been stricken by the state appellate court; (3) his due process and First Amendment rights were violated when the BPT Presiding Commissioner criticized him for having challenged his time credits via a federal habeas petition; (4) his due process rights were violated when the Board referred to a report as being poorly done, but nevertheless relied on it to deny parole; (5) his due process rights were violated by the Board's questioning his attorney as to his competence to waive appearance before the Board; (6) his due process rights were violated by the Board's bias; (7) his due process rights were violated by the Board's consideration of improper evidence; (8) his due process rights were violated when the

4

1  Board considered unsubstantiated allegations by the district attorney; (9) his due process rights
2  were violated when the Board considered a psychological evaluation which was inaccurate and
3  unreliable; (10) his due process rights were violated when the Board's decision was based on
4  conflicting reports; (11) his due process rights were violated when the parole board failed to
5  note positive factors; (12) his First Amendment rights were violated by the Board's basing its
6  denial, in part, on his insufficient participation in Alcoholics Anonymous and Narcotics
7  Anonymous; (13) his due process rights were violated by the Board's dual use of facts.

8  Respondent's motion to dismiss the petition as mixed was granted; almost all of the
9  claims were unexhausted. Petitioner was afforded an opportunity to elect whether to dismiss
10 the petition, amend it to delete the unexhausted issues, or to ask for a stay. He asked for a stay,
11 which was granted. He then filed state habeas petitions; upon his return to this court,
12 respondent again moved to dismiss, contending that some issues still were not exhausted and
13 that some or all were barred by procedural default. That motion was denied, so all thirteen
14 issues are now before the Court for decision.

15 Petitioner declined to appear at the hearing to consider whether he should be given a
16 parole date, and, according to his appointed counsel, said he did not want to be represented by
17 counsel at the hearing (Exh. 4 at 2-4). Counsel therefore was excused and the hearing
18 proceeded without the participation of petitioner or counsel (*id.* at 4).

19 Petitioner was living with the victim (*id.* at 7). She fled from their home when he beat
20 her and pointed a gun at her head (*ibid.*). About two weeks later petitioner discovered where
21 she was (*ibid.*). He was heard threatening to kill her (*id.* at 7-8). He drove to the apartment
22 complex where she was staying, parked, and waited (*id.* at 8). When she came out to go to her
23 car he approached her with a shotgun and chased her to the door of the apartment where she had
24 been staying (*ibid.*). The door was locked; petitioner shot her five times, killing her (*ibid.*). He
25 was captured about two weeks later when he was pulled over for a traffic violation (*ibid.*).

26       **a.   DENIAL OF COUNSEL**

27 In his first issue petitioner contends that the Board denied him counsel "in violation of
28 state law." Violations of state law are not grounds for federal habeas relief. *See Estelle v.*

5

*McGuire*, 502 U.S. 62, 67-68 (1991) (federal habeas unavailable for violations of state law or for alleged error in the interpretation or application of state law). Furthermore, there is no evidence in the record contradicting counsel's assertion at the hearing that petitioner had waived his right to counsel, and in any event there is no clearly-established United States Supreme Court authority providing a federal constitutional right to counsel at a parole eligibility hearing. *See Dorado v. Kerr*, 454 F.2d 892, 896 (9th Cir. 1972) (no right to counsel at parole eligibility hearing). This claim is without merit.

### b. GREAT BODILY INJURY

The jury found to be true the allegation that petitioner inflicted great bodily injury upon the victim (Exh. 3 (opinion of California Court of Appeal) at 10). The sentencing court imposed a three-year enhancement for that finding and stayed the enhancement (*id.*). The court of appeal held that the enhancement does not apply to convictions for murder "by its terms" and remanded to the trial court to strike the enhancement (*id.*).

Petitioner contends that the Board "illegally considered" the enhancement. It is true that in describing the offenses of which petitioner was convicted the presiding commissioner referred to "a stayed GBI" (Exh. 4 at 1). The great bodily injury enhancement is not mentioned in the decision itself, however (*id.* at 30-38), and there is no indication that the great bodily injury finding any impact on the decision, given that petitioner had murdered the victim. There was no constitutional violation as to this claim.

### c. PRIOR HABEAS

Petitioner had filed a habeas case challenging the CDCR's calculation of time credits. The presiding commissioner referred to it at the beginning of the hearing, when he was discussing petitioner's refusal to appear. He said that petitioner "stated that he will not participate in any BPT matter, due to a pending habeas corpus proceeding entitled Sanders v. Palmer, Tehama, Nelson, concerning his miscalculation in the date of an initial hearing and MEPD claims" (Exh.4 at 3). Petitioner contends that his First Amendment rights were violated in that the Board retaliated against him for filing the habeas case by denying him parole, but there is no evidence whatever of that. The commissioner's description is purely a neutral

6

statement of fact. This claim is without merit.

### d. BOARD REPORT

The presiding commissioner criticized the Life Prisoner Evaluation report prepared by a correctional counselor. The commissioner became confused when reading the record of petitioner's prior offenses and remarked that "this is a terrible Board report," and later that "this Board report is not making any sense. Whoa." (Exh. 3 at 11-12). As a consequence the commissioner read plaintiff's rap sheet from his central file instead of relying on the list of offenses in the Live Prisoner Evaluation report (*id.* at 11-12). Petitioner contends that the Board relied on the report despite its being unreliable. Petitioner has failed to establish that the Board relied on the report – it considered his prior offenses from his rap sheet, rather than the report, and it did not mention the report in its decision.

Furthermore, there is no constitutional limit on what evidence a parole board may consider, only a requirement that its decision be supported by some reliable evidence. *See Rosas v. Nielsen*, 428 F.3d 1229, 1232 (9th Cir. 2005). In this case, the denial was supported by much reliable evidence. For one thing, petitioner had served only eighteen years of a twenty-seven years to life sentence for a particularly brutal first-degree murder. This was his first parole consideration hearing, so he had not yet served the minimum in calendar years, *see Irons*, 505 F.3d at 853-54, and there is no issue of repeated denials based on the offense itself, *see Biggs*, 334 F.3d at 917. Petitioner declined to learn a vocation, saying that if he did so it would be obsolete by the time he was paroled (Exh. 4 at 20); his attendance at various self-help programs was sporadic and unsatisfactory (*id.* at 21); he had received many rule violation reports and counseling memos, the most recent being the year before the hearing for disobeying orders (*id.* at 22); received a high-unfavorable psychological report (*id.* at 24-25); and failed to provide any documentation for his supposed parole plans (*id.* at 26).

There was no constitutional violation as to this claim.

### e. COUNSEL

Petitioner contends that his attorney had only a brief meeting with him and thus was not qualified to inform the Board that he appeared to be competent to waive his state-law right to

7

counsel (Exh. 4 at 4). There is no federal right to counsel in a parole eligibility hearing, so whether he was competent to waive counsel is irrelevant. *See Dorado v. Kerr*, 454 F.2d 892, 896 (9th Cir. 1972). This claim is without merit.

### f. EVIDENCE

Petitioner contends that various statements made by the Board were incomplete or inaccurate (Pet. at 6A). As discussed above, there is no constitutional right to have only accurate evidence presented; the only evidentiary right applicable to parole hearings is that the result by supported by some reliable evidence, as was overwhelmingly the case here. This claim is without merit.

### g. TAPE

Petitioner contends that the Board considered a 911 tape that was excluded from evidence at his trial. It was brought to the hearing by the Assistant District Attorney, who said that he intended to put it in petitioner's central file and acknowledged that it could not be considered that day under the Board's rules (Exh. 3 at 27), presumably because it had not been provided to the Board at least ten days before the hearing. Petitioner contends that a few phrases from the Board's decision echo statements on the tape, and therefore guesses that the commissioners listened to the tape while deliberating, but he provides no evidence that the phrases are the same, nor does he provide any other evidence that the tape was considered. In addition, there is no constitutional right to have evidence which has been suppressed at trial also suppressed at a parole hearing. This claim is without merit.

### h. DISTRICT ATTORNEY'S STATEMENT

Petitioner contends that some of the assistant district attorney's statement was speculation and "unsubstantiated." For the reasons set out above in the discussions of his other evidentiary claims, this claim is without merit.

### i. PSYCHOLOGICAL REPORT

Petitioner contends that the psychologist's report contained errors of fact and that the tests he administered are not appropriate for predicting future dangerousness. He has failed to establish the factual basis for these arguments by evidence in the record, and as discussed

above, there is no federal constitutional requirement as to evidence at a parole eligibility hearing except that the decision be supported by some reliable evidence, as this decision abundantly was. This claim is without merit.

### j. CONFLICTING REPORTS

Petitioner contends that his due process rights were violated when the decision was based on conflicting reports, one by a correctional counselor and one by a psychologist. His allegations as to the conflicts are conclusory, and his contention that proper state procedures were not followed to resolve the alleged contradictions are irrelevant in a federal habeas proceeding. This claim is without merit.

### k. OMITTED MATERIAL

Petitioner contends that the Board did not consider his ten Federal Emergency Management courses and certain other positive achievements. Again, his contention that failure to consider these items violated the Board's regulations is no ground for federal habeas relief. As discussed above, the only constitutional requirement regarding evidence in a parole eligibility hearing is that the decision be supported by some reliable evidence. This claim is without merit.

### l. FIRST AMENDMENT

Petitioner contends that he was found unsuitable for release because of inadequate participation in Narcotics Anonymous ("NA") and Alcoholic Anonymous ("AA"), and that because these programs require acknowledgment of a higher power, violated his First Amendment rights. In deciding whether to give a parole date, however, the Board said only that "he's not participated in beneficial self-help and therapy programmings to any extent" (Exh.3 at 33). There was no reference to NA or AA. This claim is without merit.

### m. DUAL USE OF FACTS

Petitioner contends that the Board violated state law by using the same facts to deny parole and to defer the next parole hearing for five years. Because this is a state-law claim, it cannot be the basis for federal habeas relief. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). It is without merit.

9

**CONCLUSION**

The petition is **DENIED**. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: October  20 , 2008



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

N:\Judge Alsup\SANDERS886.RUL.wpd